UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MARCO A. COVARRUBIAS and OLGA A. COVARRUBIAS, | § § § | |
| Plaintiffs, | § § | |
| v. | § § | CIVIL ACTION NO. 3:13-CV-3002-B |
| U.S. BANK, NATIONAL ASSOCIATION, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF BANC OF AMERICA FUNDING CORPORATION 2009-FT1 TRUST, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2009-FT1, RECONTRUST COMPANY, N.A. and BANK OF AMERICA, N.A., | § § § § § § § § § § § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is a Motion for Summary Judgment (doc. 10), filed by Defendants U.S. Bank National Association, as Trustee for the Certificateholders of Banc of America Funding Corporation 2009-FTI Trust, Mortgage Pass-Through Certificates, Series 2009-FTI ("U.S. Bank"), ReconTrust Company, N.A. ("ReconTrust"), and Bank of America, N.A. ("BOA") (collectively, "Defendants") on April 22, 2014. For the reasons stated below, Defendants' Motion is **GRANTED.**

## I.

## BACKGROUND[1]

This case arises out of a dispute regarding a home mortgage and subsequent foreclosure. Plaintiffs Marco A. Covarrubias and Olga A. Covarrubias ("Plaintiffs") allege that Defendants did not have the authority to foreclose on Plaintiffs' property. Based on these foreclosure proceedings, Plaintiffs assert the following causes of action against Defendants: (1) fraudulent lien instrument under Texas Civil Practice and Remedies Code § 12.001 *et seq.*; (2) violation of the Texas Debt Collection Practices Act; (3) violation of the notice requirements established by Texas Property Code § 51.002; (4) breach of contract; and (5) wrongful foreclosure. Doc. 1-3, Pls.' Orig. Pet. 4–8. Plaintiffs further seek injunctive relief and a declaratory judgment stating that the substitute trustee's deed executed pursuant to the foreclosure sale is void. *Id.* at 8.

A.    *Factual Background*

On May 17, 2003, Plaintiffs executed a note (the "Note") in the amount of $96,095.30 for the purchase and finance of a residence located at 1737 Stewart Drive, Cedar Hill, Texas 75104 (the "Property"). Pls.' Orig. Pet. 1–2; Doc. 13, Pls.' Reply, Ex. A, Decl. of Michael Brinkley. The Note was made payable to BOA and was secured by a deed of trust (the "Deed of Trust") that named BOA as mortgagee. Pls.' Orig. Pet. 2. The Note and Deed of Trust were assigned to U.S. Bank on September 27, 2011, with BOA remaining as the mortgage servicer. *Id.* at 3. Because Plaintiffs failed to make payment in accordance with the Note, they were held to be in default, and the Property was

---

[1] The Court draws its factual account from the parties' pleadings, summary judgment briefs, and evidentiary submissions. Unless characterized as a contention by one of the parties, these facts are undisputed.

subsequently sold at a foreclosure sale on January 3, 2012. *See id.* at 4. Following the foreclosure, Defendants initiated a suit for forcible detainer against Plaintiffs in the Justice of the Peace Court, Precinct 4, Dallas County, Texas, which resulted in a judgment granting Defendants possession of the Property. *Id.* at 3, 5.

B.    *Procedural Background*

On May 21, 2013, Plaintiffs filed their Original Petition against Defendants in the County Court at Law No. 1, Dallas County, Texas. Pls.' Orig. Pet. In their Original Petition, Plaintiffs assert claims for (1) fraudulent lien instrument under Texas Civil Practice and Remedies Code § 12.001 *et seq.*; (2) violation of the Texas Debt Collection Practices Act; (3) violation of the notice requirements established by Texas Property Code § 51.002; (4) breach of contract; and (5) wrongful foreclosure. *Id.* at 4–8. Plaintiffs seek various forms of relief, including statutory damages, actual damages, attorneys' fees and costs, injunctive relief, and declaratory relief. *Id.* at 7–9.

Defendants removed the case to this Court on August 1, 2013. Doc. 1, Notice of Removal. On April 22, 2014, Defendants filed the present Motion for Summary Judgment (doc. 10), contending that Plaintiffs' claims fail as a matter of law. Specifically, Defendants move for summary judgment on Plaintiffs' claims for (1) fraudulent lien instrument under Texas Civil Practice and Remedies Code § 12.001 *et seq.*; (2) violation of the Texas Debt Collection Practices Act; (3) violation of the notice requirements under Texas Property Code § 51.002; and (4) breach of contract. Doc. 10-1, Defs.' Br. 4–10. They further move for summary judgment on Plaintiffs' request for injunctive relief. *Id.* at 10–11. Plaintiffs filed their Response (doc. 13) to Defendants' Motion on May 27, 2014, and Defendants submitted their Reply (doc. 15) on May 29, 2014. The Motion is now ripe for the Court's review.

## II.

## LEGAL STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate when the pleadings and record evidence show that no genuine issue of material fact exists and that, as a matter of law, the movant is entitled to judgment. *Hart v. Hairston*, 343 F.3d 762, 764 (5th Cir. 2003). In a motion for summary judgment, the burden is on the movant to prove that no genuine issue of material fact exists. *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 991 (5th Cir. 2001). To determine whether a genuine issue exists for trial, the Court must view all of the evidence in the light most favorable to the non-movant, and the evidence must be sufficient such that a reasonable jury could return a verdict for the non-movant. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 371–72 (5th Cir. 2002).

When the party with the burden of proof is the movant, it must establish each element of its claim as a matter of law. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). If the non-movant bears the burden of proof at trial, the summary judgment movant need not support its motion with evidence negating the non-movant's case. *Latimer v. Smithkline & French Lab.*, 919 F.2d 301, 303 (5th Cir. 1990). Rather, the movant may satisfy its burden by pointing to the absence of evidence to support the non-movant's case. *Id.*; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

Once the movant has met its burden, the non-movant must show that summary judgment is not appropriate. *Little*, 37 F.3d at 1075 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). "This burden is not satisfied with some metaphysical doubt as to material facts, . . . by

conclusory allegations, . . . by unsubstantiated assertions, or by only a scintilla of evidence." *Id.* (internal citations and quotations omitted). The non-moving party must "come forward with 'specific facts showing that there is a *genuine issue for trial*.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (quoting Fed. R. Civ. P. 56(e)).

The district court does not have a duty to search the entire record to find evidence supporting the non-movant's opposition. *Jones v. Sheehan, Young, & Culp, P.C.*, 82 F.3d 1334, 1338 (5th Cir. 1996). Rather, the non-movant must "identify specific evidence in the record, and [] articulate the 'precise manner' in which that evidence support[s] [her] claim." *Bookman v. Shubzda*, 945 F. Supp. 999, 1004 (N.D. Tex. 1996) (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994)).

## III.

## ANALYSIS

Defendants U.S. Bank, ReconTrust, and BOA move for summary judgment on Plaintiffs' claims for (1) fraudulent lien instrument; (2) violation of the Texas Debt Collection Practices Act; (3) violation of the notice requirements under Texas Property Code § 51.002; and (4) breach of contract. Defs.' Br. 4–10. They further move for summary judgment on Plaintiffs' request for injunctive relief. *Id.* at 10–11. Therefore, the Court reviews the arguments and summary judgment evidence presented on these claims, in turn, below.[2]

A.    *Fraudulent Lien Claim*

---

[2] Defendants do not appear to move for summary judgment with respect to Plaintiffs' claim for wrongful foreclosure. However, because this claim is based on contentions raised with respect to the remaining claims, and because the Court grants summary judgment on all claims discussed in Defendants' Motion, the wrongful foreclosure cause of action is similarly found to be without merit.

The Court first turns to Plaintiffs' fraudulent lien claim, under which they assert that BOA lacked the authority to execute two appointments of substitute trustee. Pls.' Orig. Pet. 4. Plaintiffs therefore claim that BOA's appointments of ReconTrust as substitute trustee are invalid and constitute a violation of Texas Civil Practice and Remedies Code § 12.001 *et seq. Id.*

To prevail on a fraudulent lien claim under Texas Civil Practice and Remedies Code § 12.001 *et seq.*, a plaintiff must demonstrate that the defendant: (1) made, presented, or used a document with knowledge that it was a fraudulent court record or a fraudulent lien, claim against, or interest in real or personal property; (2) intended that the document be given legal effect; and (3) intended to cause plaintiff physical or financial injury, or mental or emotional distress. Tex. Civ. Prac. & Rem. Code § 12.002(a); *Coleman v. Bank of N.Y. Mellon*, 969 F. Supp. 2d 736, 750 (N.D. Tex. 2013).

With respect to the first appointment of substitute trustee (the "First Appointment"), Plaintiffs explain that on September 26, 2011, BOA, acting as attorney-in-fact for U.S. Bank, appointed ReconTrust as substitute trustee. Pl.'s Orig. Pet. 2–3. Plaintiffs present two reasons why the First Appointment is invalid. First, they argue that BOA, acting as attorney-in-fact for U.S. Bank, was without authority to appoint ReconTrust as substitute trustee because this appointment occurred one day prior to BOA's Corporate Assignment of Deed of Trust to U.S. Bank, dated September 27, 2011. *Id.* at 3. Therefore, U.S. Bank could not have given BOA the power of attorney to appoint ReconTrust prior to having been properly assigned the rights under the Deed of Trust. *Id.* Second, Plaintiffs contend that BOA had no authority to act on behalf of U.S. Bank because "no sufficient power of attorney from [U.S. Bank] to [BOA or its representative] was of record in the office of the County Clerk to support the First Appointment, as mandated by Texas Probate Code § 489." *Id.* Plaintiffs thus argue that even if BOA could have been properly appointed as attorney-in-

fact for U.S. Bank, such power of attorney would be invalid because it was not recorded at the County Clerk's Office. *Id.*

Regarding the second appointment of substitute trustee (the "Second Appointment"), which was allegedly executed on September 27, 2011, the day of BOA's assignment of the Deed of Trust to U.S. Bank, Plaintiffs similarly contend that BOA, acting as attorney-in-fact for U.S. Bank, had no authority to appoint ReconTrust as substitute trustee because "no sufficient power of attorney from [U.S. Bank] to [BOA or its representative] was of record in the office of the County Clerk to support the Second Appointment, as mandated by Texas Probate Code § 489." *Id.*

Relying on Texas Probate Code § 489, which has since been repealed and reenacted as Texas Estates Code § 751.151, Plaintiffs argue that "any power of attorney authorizing execution of a recordable instrument affecting real property must be recorded." *Id.* Arguing that BOA did not have a properly recorded power of attorney from U.S. Bank to appoint ReconTrust as substitute trustee, Plaintiffs claim that Defendants caused fraudulent documents—the First and Second Appointments—to be filed in the public records maintained by the County Clerk of Dallas County. *Id.* at 5. Plaintiffs thus request statutory and actual damages pursuant to Texas Civil Practice and Remedies Code § 12.001 *et seq. Id.*[3]

Defendants move for summary judgment on Plaintiffs' fraudulent lien claim and challenge

---

[3] The Court notes that neither party has provided evidence of the two distinct Appointments. While Defendants offer a copy of an appointment executed on September 26, 2011, it remains unclear how this relates to any other appointment. However, in applying the summary judgment standard, the Court examines all matters in the light most favorable to Plaintiffs and their claims, and therefore considers their allegations, stated in their Original Petition, that the First Appointment of ReconTrust occurred on September 26, 2011, that the Second Appointment was executed on September 27, 2011, and that both Appointments were properly recorded. Pls.' Orig. Pet. 2–3. The Court therefore examines whether any genuine issues have been raised as to these assertions.

their contention that there were improprieties in the designation of the substitute trustee. Defs.' Br. 5. With respect to Plaintiffs' assertion that "any power of attorney authorizing execution of a recordable instrument affecting real property must be recorded," Defendants explain that Plaintiffs' reliance on the Texas Probate Code is misplaced, because the matter is instead controlled by the Texas Property Code. Defs.' Br. 4. Defendants correctly assert that a power of attorney such as the one executed between BOA and U.S. Bank need not be recorded to give effect to an assignment or appointment affecting a real property interest. *Id.* Defendants direct the Court to *Gillespie v. BAC Home Loans Servicing, LP*, which discusses Texas Property Code § 51.0075(c)[4] and states that "[t]he plain language of the Property Code does not indicate the existence of any requirement that the appointment of a substitute trustee be recorded to be valid, and courts interpreting the provisions have not found such a requirement." No. 4:11-CV-388-A, 2013 WL 646383, at *6 (N.D. Tex. Feb 21, 2013) (citations omitted). The *Gillespie* court further held that the defendant "was not required to record a power of attorney for the assignment of the note or the appointment, and any claim based on the argument that recording was required must fail." *Id.*

In line with this authority, the Court agrees that Defendants were not required to record a power of attorney pursuant to the appointment of ReconTrust as substitute trustee. Furthermore, Texas Estates Code § 751.151, formerly codified as Texas Probate Code § 489, relates to *durable* powers of attorney, and provides that:

---

[4] Texas Property Code § 51.0075(c) provides:
> Notwithstanding any agreement to the contrary, a mortgagee may appoint or may authorize a mortgage servicer to appoint a substitute trustee or substitute trustees to succeed to all title, powers, and duties of the original trustee. A mortgagee or mortgage servicer may make an appointment or authorization under this subsection by power of attorney, corporate resolution, or other written instrument.

> A durable power of attorney for a real property transaction requiring the execution and delivery of an instrument that is to be recorded, including a release, assignment, satisfaction, mortgage, security agreement, deed of trust, encumbrance . . . lien, or other claim or right to real property, must be recorded in the office of the county clerk in which the property is located.

Tex. Estates Code § 751.151.

A durable power of attorney, in turn, is defined as a written instrument that designates another person as attorney in fact or agent, is signed by an adult principal, and provides that the power of attorney "is not affected by subsequent disability or incapacity of the principal" or "becomes effective on the disability or incapacity of the principal," or contains words to similar effect. *Id.* §§ 751.002, 751.151. Therefore, the provision that Plaintiffs rely on is specifically directed at *durable* powers of attorney—powers of attorney that contain particular language allowing them to remain in effect even if the principal becomes incapacitated. *Id.* § 751.002. There is no indication that such a durable power of attorney existed between representatives of BOA and U.S. Bank. Accordingly, this provision does not apply to the matter before the Court.

Having determined that the Texas Property Code does not require that Defendants record a power of attorney in order to give effect to an assignment or appointment, the Court finds that Plaintiffs are precluded from claiming that the Second Appointment is invalid and are further precluded from raising this issue with respect to the First Appointment. The Court thus turns to Plaintiff's remaining argument regarding the First Appointment—that it is invalid and fraudulent because it was executed on behalf of U.S. Bank one day before the Deed of Trust was assigned to U.S. Bank. Pls.' Orig. Pet. 3.

Defendants assert that Plaintiffs cannot establish the elements of a fraudulent lien claim,

because there is sufficient evidence that the assignment and appointments were not fraudulent and that Defendants did not intend to cause Plaintiffs injury. Defs.' Br. 6; *see* Tex. Civ. Prac. & Rem. Code § 12.002(a) (requiring plaintiff asserting a fraudulent lien claim to show that defendant: (1) made, presented, or used a document with knowledge that it was a fraudulent court record or a fraudulent lien, claim against, or interest in real or personal property; (2) intended that the document be given legal effect; and (3) intended to cause plaintiff physical or financial injury, or mental or emotional distress). In support of their contention that they did not intend to cause Plaintiffs injury, Defendants present evidence demonstrating that they were entitled to foreclose on the Property due to Plaintiffs' failure to make timely payments on their mortgage. Tex. Civ. Prac. & Rem. Code § 12.002(a)(1); Defs.' Br. 6; Exs. A, APP 1–3, Decl. of Lora J. Stanford; A-4, APP 18–20, Notice of Default, January 22, 2010; A-5, APP 21–23, Notice of Default, February 22, 2010; B, APP 24–25, Decl. of Paul Butler; B-2, APP 27, Notice of Foreclosure Sale. The appointments at issue occurred in September 2011, over eighteen months after Plaintiffs were notified of their default on the loan. *See* Defs.' Exs. A-4, Notice of Default, January 22, 2010; A-5, Notice of Default, February 22, 2010. Relying on copies of the notices of Plaintiffs' default and correspondence indicating their failure to cure such default despite being given the opportunity to do so, Defendants argue that the appointments were not fraudulent or intended to cause injury, as there was a valid reason for appointing a substitute trustee in preparation for the lawful foreclosure proceedings against the Property. Defs.' Br. 6.

In their Response, Plaintiffs reiterate their argument that Texas Probate Code § 489 applies to the facts of the present case and further argue that "Defendants are charged at all times relevant to the Loan with knowledge of the state of the public record, the absence of the Assignment before

the Second [sic] Appointment and the absence of powers of attorney to support either Appointment

. . ." Pls.' Resp. Br. 5.[5]

After reviewing the evidence in the light most favorable to Plaintiffs, the Court finds that

Defendants have satisfied their burden by providing competent summary judgment evidence to

demonstrate that the appointments of a substitute trustee were not fraudulent and thus did not

violate Texas Civil Practice and Remedies Code § 12.001 *et seq*. Although BOA, acting as the

attorney-in-fact for U.S. Bank, attempted to appoint ReconTrust as substitute trustee one day before

U.S. Bank was formally assigned the Deed of Trust, this does not demonstrate that Defendants

intended to cause Plaintiffs injury—a necessary element of a claim for fraudulent lien. *See* Tex. Civ.

Prac. & Rem. Code § 12.002(a). As Defendants demonstrate through competent summary judgment

evidence, Plaintiffs were informed of their default and right to cure to avoid the loan's acceleration

on January 22, 2010 and February 22, 2010. *See* Defs.' Exs. A-4, Notice of Default, January 22, 2010;

---

[5] In their Response, Plaintiffs also challenge the accuracy of the Declaration of Paul Butler, Vice President of ReconTrust, which Defendants present along with copies of the Appointment of Substitute Trustee, Notice of Foreclosure Sale, and Substitute Trustee's Deed. Defs.' Ex. B, Decl. of Paul Butler. Plaintiffs point to an error in the name used in the declaration; in paragraph 6, the declarant asserts that notices "were sent to the Covarrubiases by depositing the same into the U.S. mail, postage prepaid, via certified mail, return receipt requested, to Smith's last known address." Pls.' Resp. Br. 2; Defs.' Ex. B, APP 25. The reference to "Smith's last known address," while incorrect, is the only discrepancy noted by the Court and is countered by the actual Notice of Substitute Trustee's Sale, which clearly contains Plaintiffs' address. *See* Defs.' Ex. B-2, Notice of Substitute Trustee's Sale. Moreover, Plaintiffs do not allege that the notice of sale was not sent to them, but rather assert that the parties who sent the notice did not have the authority to do so. Accordingly, the error in the Declaration of Paul Butler does not render it invalid, and the Court considers it as part of the summary judgment record.

Plaintiffs further attempt to argue that the declaration vouches for the "Second Appointment," asserting it was executed on September 26, 2011 (one day before the assignment by BOA to U.S. Bank), when in fact Plaintiffs in their Original Petition have stated that the Second Appointment was executed on September 27, 2011, the same day as the assignment. Pls.'s Resp. Br. 2–3; Pls.' Orig. Pet. 2–3. Given the lack of consistency and clarity in Plaintiffs' briefings, the Court is unable to discern a viable argument challenging the Declaration of Paul Butler and Defendants' accompanying exhibits.

A-5, Notice of Default, February 22, 2010. Following Plaintiffs' failure to cure their default, Defendants began making arrangements in light of their right to initiate foreclosure proceedings. Plaintiffs dispute the validity of such proceedings on the basis that the First and Second Appointments of ReconTrust as substitute trustee are invalid, but they overlook the fact that such a measure does not constitute an actionable injury, but is rather Defendants' lawful remedy. *See Reece v. U.S. Bank, N.A.*, 762 F.3d 422, 424 (5th Cir. 2014) (holding that "a bank's usage of an assignment for business purposes 'hardly equates to an argument that the bank intended to inflict financial injury or mental anguish.'") (quoting *Golden v. Wells Fargo Bank, N.A.*, 557 F. App'x 323, 327 (5th Cir. 2014).

Moreover, as Plaintiffs themselves allege in their Original Petition, following the First Appointment, BOA did in fact assign the Deed of Trust to U.S. Bank on September 27, 2011. Pls.'s Orig. Pet. 3. On the same day as this assignment, BOA, as attorney-in-fact for U.S. Bank, executed the Second Appointment, in which ReconTrust was appointed as substitute trustee. *Id.* at 3. Because the Court has previously concluded that the Second Appointment is not invalidated by the fact that the power of attorney was not recorded, and because Plaintiffs raise no other issues pertaining to this appointment, the Court finds that BOA, acting as attorney-in-fact for U.S. Bank, properly appointed ReconTrust as substitute trustee. Accordingly, Defendants' Motion for Summary Judgment with respect to Plaintiffs' fraudulent lien claim is **GRANTED**.

B.      *Violations of Texas Property Code § 51.002*

The Court turns to Plaintiffs' claim that Defendants failed to send notices in accordance with section 51.002 of the Texas Property Code due to their lack of capacity to provide such notices. Pls.' Orig. Pet. 6. Plaintiffs' claim under the Texas Property Code does not rest on an allegation that the

requisite notices were sent incorrectly, but is rather based on the assertion that Defendants did not have the authority to send these notices. *Id.* Specifically, Plaintiffs claim that Defendants violated Texas Property Code §§ 51.002(b) and 51.002(d) because they did not have the "proper capacity" to send the notices required by these sections. *Id.*

Section 51.002 of the Texas Property Code governs the sale of real property under deeds of trust or other contract liens. In particular, section 51.002(d) provides that "[n]otwithstanding any agreement to the contrary, the mortgage servicer . . . shall serve a debtor in default . . . with written notice by certified mail stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of the sale can be given." Tex. Prop. Code. § 51.002(d). Section 51.002(b) states that notice of sale, in turn, must be given at least twenty-one days before the date of the sale and specifies various locations where the notice must be made available. *Id.* §§ 51.002(b)(1)–(3).

Defendants assert that Plaintiffs' allegations of improper notice are without merit and offer copies of the notices of default and foreclosure sale, as well as accompanying affidavits stating that the notices were sent via certified mail. Defs.'s Br. 5; Exs. A, Decl. of Lora J. Stanford; A-4, Notice of Default, January 22, 2010; A-5, Notice of Default, February 22, 2010; B, Decl. of Paul Butler; B-2, Notice of Foreclosure Sale.[6]

---

[6] In their Response, Plaintiffs raise various challenges with respect to the Declaration of Lora J. Stanford. First, they argue that the affidavit conflicts with the notices of default; they claim that the affidavit refers to BAC Home Loans Servicing, LP as the servicer, whereas the notices refer to it as the mortgagee. Pls.'s Resp. Br. 2. Plaintiffs fail to observe that the notices explain that BAC Home Loans Servicing, LP "services the home loan." *See* Defs.' Exs. A-4, Notice of Default, January 22, 2010; A-5, Notice of Default, February 22, 2010.

Second, Plaintiffs assert that the affidavit is not based on personal knowledge and merely offers legal conclusions. Pls.' Resp. Br. 2, 5–6. In fact, as Defendants explain in their Reply, Stanford's affidavit asserts that "it is based on [her] personal review of the relevant records," states that Stanford is an "AVP, Operations

In response, Plaintiffs reiterate their contention that "Defendants' acts in furtherance of foreclosure, in the Second Appointment and in the notices of substitute trustee's sale thereafter, . . . were each acts in violation of the . . . Property Code due to the lack of authority of the persons so acting, [and] due to the deficient First Appointment and Second Appointment." Pls.' Resp. Br. 7. Plaintiffs thus do not challenge the procedures used to send notices of default and sale under this particular claim, but rather assert that Defendants had no capacity to send these notices.[7]

After reviewing the evidence in the light most favorable to Plaintiffs, the Court concludes that Defendants have satisfied their burden of showing that the notices of default and sale were sent by parties having the authority to do so, as provided by the Texas Property Code. With respect to the notices of default, Defendants submit copies of two notices sent to Plaintiffs, informing them of their default and allowing them the opportunity to cure. Defs.' Br. 5; Exs. A-4, Notice of Default, January 22, 2010; A-5, Notice of Default, February 22, 2010. The Court notes that they were sent by BAC Home Loans Servicing, LP, a subsidiary of BOA. *Id.* Because the notices were sent prior to BOA's September 2011 assignment of its rights under the loan to U.S. Bank, BOA was the holder of the Note and was therefore the proper party to send such notices.

---

Team Manager for Bank of America" who has "access to the books and records of Bank of America pertaining to the mortgage at issue in this matter," and describes the relevant documents based on such knowledge and access to records. Defs.' Reply 2–3; Ex. A, Decl. of Lora J. Stanford. Accordingly, the requirement of Federal Rule of Civil Procedure 56(c)(4) for the submission of affidavits or declarations is satisfied. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."). As such, the Declaration of Lora J. Stanford is properly considered as part of the summary judgment record before the Court.

[7] Though Plaintiffs do not challenge the manner in which Defendants notified Plaintiffs of the default and upcoming foreclosure sale in their claim under the Texas Property Code, they do raise this issue as part of their Texas Debt Collection Practices Act claim. The Court therefore considers the relevant arguments in the section examining the Texas Debt Collection Practices Act.

Regarding the notice of foreclosure sale, Defendants offer the Notice of Substitute Trustee's Sale, dated December 12, 2011, which ReconTrust sent to Plaintiffs and filed with the Warren County Clerk's Office, and which informs Plaintiffs of the Property's upcoming foreclosure sale. Defs.' Ex. B-2, Notice of Foreclosure Sale. This notice of sale lists BOA as the original mortgagee and U.S. Bank as the current mortgagee. *Id.* The notice further states that BOA "is acting as the Mortgage Servicer for U.S. Bank . . . who is the Mortgagee of the Note and Deed of Trust associated with the above referenced loan." *Id.* The notice then explains that "[t]he Mortgage Servicer is authorized to represent the Mortgagee by virtue of a servicing agreement with the Mortgagee." *Id.* Finally, the notice indicates that "[p]ursuant to the Servicing Agreement and Texas Property Code § 51.0025, the Mortgage Servicer is authorized to collect the debt and to administer any resulting foreclosure of the property securing the debt." *Id.* Texas Property Code § 51.0025, in turn, provides in relevant part that "[a] mortgage servicer may administer the foreclosure of property under Section 51.002 on behalf of a mortgagee if . . . the mortgage servicer and the mortgagee have entered into an agreement granting the current mortgage servicer the authority to service the mortgage." Tex. Prop. Code § 51.0025(1). Thus, under Texas Property Code § 51.0025 and the "Service Agreement" referenced in the notice of sale, BOA had the authority to act as mortgage servicer and administer the foreclosure of the Property.

With respect to the fact that the notice of sale was sent by ReconTrust rather than BOA or U.S. Bank, Plaintiffs themselves state in their Original Petition that BOA, as attorney-in-fact for U.S. Bank, appointed ReconTrust as substitute trustee in September 2011. Pls.' Orig. Pet. 2–3. Because the Court previously rejected Plaintiffs' claim that the appointment was invalid, the appointment of ReconTrust as substitute trustee and ReconTrust's subsequent issuance of a notice of sale are

properly considered and indicate that the notice of sale was sent in accordance with the requirements of the Texas Property Code.

In sum, Defendants have illustrated that the notices of default and sale were sent by parties with the authority to do so, as provided by the Texas Property Code. For the foregoing reasons, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' claim under the Texas Property Code. Accordingly, Defendants' Motion is **GRANTED** with respect to this claim.

C.    *Violations of the Texas Debt Collection Practices Act*

Next, the Court considers Plaintiffs' claim that Defendants violated the Texas Debt Collection Practices Act, Texas Finance Code § 392.001 *et seq.* (the "TDCPA") by threatening and effecting the substitute trustee's sale of the Property and by seeking the eviction of Plaintiffs from the Property. Pls.' Orig. Pet. 5. The TDCPA prohibits debt collectors from engaging in a variety of conduct in the course of debt collection. *See, e.g.,* Tex. Fin. Code §§ 392.301–.304. Plaintiffs bring their claims under subsection 392.301(a)(8) of the Texas Finance Code, which prohibits a debt collector from using threats, coercion, or attempts to coerce that employ the practice of "threatening to take action prohibited by law." *Id.* § 392.301(a)(8). Specifically, Plaintiffs allege that Defendants violated the TDCPA by taking the following actions that are "prohibited by law:" (1) failing to give notices of acceleration and default as required under section 51.002(d) of the Texas Property Code, in part due to Defendants' lack of capacity to give such notices; (2) failing to give notice of sale in compliance with section 51.002(b) of the Texas Property Code, in part due to Defendants' lack of capacity to give such notice;[8] (3) filing suit for forcible detainer against Plaintiffs; and (4) failing to

---

[8] In their Original Petition, Plaintiffs confound the provisions of sections 51.002(b) and 51.002(d) of the Texas Property Code. In its discussion, the Court has adjusted the organization of the claims to ensure

give notice of the forcible detainer suit in accordance with sections 25.002 and 24.005 of the Texas Property Code. Pls.' Orig. Pet. 5.[9]

In support of their request for summary judgment on this claim, Defendants first assert that the TDCPA "makes a specific exception to claims . . . where the alleged offending party is 'exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings.'" Defs.' Br. 8 (quoting Tex. Fin. Code § 392.301(b)(3)). Noting that a non-judicial foreclosure sale qualifies as such a proceeding, Defendants maintain that Plaintiffs' claim is not actionable. *Id.*

The Court disagrees with Defendants' interpretation of section 392.301 of the Texas Finance Code. Section 392.301(b)(3) states that section 392.301(a) (which lists prohibited activities, including "threatening to take an action prohibited by law") does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." Tex. Fin. Code § 392.301(b)(3). Looking to the plain meaning of this statute, the Court finds that section 392.301(b)(3) does not, as Defendants would suggest, *permit* activities that would otherwise be prohibited by law under subsection 392.301(a)(8); rather, it simply explains that when debt collectors pursue their right to seize, repossess, or sell property, they do not *automatically* engage in activity that violates section 392.301(a). For example,

clarity and consistency with the Texas Property Code.

[9] Although the Texas Supreme Court has not decided whether foreclosure is a "debt collection" as defined by the TDCPA, Defendants do not challenge the TDCPA's applicability on this ground. *See* Tex. Fin. Code § 392.001(5); Defs.' Br. 8–9. The Court thus follows the determination made by other courts in this district that "the TDCPA can apply to actions taken in foreclosing on real property." *Biggers v. BAC Home Loans Servicing, LP*, 767 F. Supp. 2d 725, 730–32 (N.D. Tex. 2011); *see also Fashina v. Fed. Home Loan Mortg. Corp.*, No. 3:12-CV-822-N-BK, 2012 WL 6772058, at *5 (N.D. Tex. Dec. 11, 2012); *Woods v. Bank of Am., N.A.*, No. 3:11-CV-1116-B, 2012 WL 1344343, at *5 (N.D. Tex. Apr. 17, 2012).

the act of issuing threats "that nonpayment of a consumer debt will result in the seizure, repossession, or sale of the person's property without proper court proceedings" is prohibited by section 392.301(a), but section 392.301(b)(3) states that this does not prevent a debt collector from "exercising or threatening to exercise a statutory or contractual right of seizure, repossession, or sale that does not require court proceedings." *See id.* §§ 392.301(a)(7), 392.301(b)(3). However, notwithstanding the permission to exercise statutory and contractual rights outlined in section 392.301(b)(3), debt collectors nonetheless cannot "accus[e] falsely or threaten[] to accuse falsely a person of fraud or any other crime," as provided in section 392.301(a)(2), or "threaten[] to take an action prohibited by law," as outlined in section 392.301(a)(8). *Id.* §§ 392.301(a), 392.301(b)(3). Therefore, an action "prohibited by law" under section 392.301(a)(8) remains prohibited even if it is carried out pursuant to a non-judicial foreclosure proceeding, and Plaintiffs are entitled to raise such a claim against Defendants even though it arises from the foreclosure on their Property.

Thus, the Court must examine whether there is any issue of material fact as to whether Defendants engaged in the activities prohibited by section 392.301(a) of the Texas Finance Code. Defendants dispute the allegation that they undertook an "action prohibited by law" by failing to submit the requisite acceleration and sale notices required by the Texas Property Code. Defs.' Br. 8. Because Plaintiffs' claim under the TDCPA rests entirely on their contention that Defendants' initiation of foreclosure proceedings and forcible detainer action constituted "actions prohibited by law," the Court must determine whether these notices complied with the relevant law in order to evaluate Plaintiffs' TDCPA claim. The Court thus examines each action alleged to be a violation of the TDCPA, in turn, below.

1.    Notice of Default under Texas Property Code § 51.002(d)

Without describing the specific ways in which Defendants allegedly violated section 51.002(d) of the Texas Property Code, Plaintiffs claim that Defendants failed to give the notices of default and acceleration that the statute requires, in part due to their lack of capacity to do so. Pls.' Orig. Pet. 5.

As previously noted, section 51.002(d) of the Texas Property Code provides that "[n]otwithstanding any agreement to the contrary, the mortgage servicer . . . shall serve a debtor in default . . . with written notice by certified mail stating that the debtor is in default . . . and giving the debtor at least 20 days to cure the default before notice of the sale can be given." Tex. Prop. Code. § 51.002(d). Additionally, though the Texas Property Code does not require that a notice of intent to accelerate or a notice of acceleration be sent prior to a foreclosure sale, Texas common law does impose such obligations. *See Ogden v. Gibraltar Sav. Ass'n*, 640 S.W.2d 232, 233–34 (Tex. 1982) (explaining that a notice of intent to accelerate provides the debtor "an opportunity to cure his default prior to [the] harsh consequences of acceleration and foreclosure" and that a notice of acceleration "cuts off the debtor's right to cure his default and gives notice that the entire debt is due and payable.").

The Texas Property Code clarifies that "[s]ervice of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address . . . ." Tex. Prop. Code § 51.002(e). Further, an "affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service." *Id.* Actual notice of default is not required. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d 249, 256 (5th Cir. 2013). Therefore, a party foreclosing on property is not required to demonstrate that the debtor actually received the necessary notice. *Id.*

- 19 -

To establish their compliance with section 51.002(d) of the Texas Property Code with respect to the notice of default, Defendants provide copies of two letters addressed to Plaintiffs, notifying them of their default and informing them that if the default is not cured by a certain date, the mortgage payments will be accelerated and foreclosure proceedings will be initiated. Defs.' Exs. A-4, Notice of Default, January 22, 2010; A-5, Notice of Default, February 22, 2010. The first notice of default is dated January 22, 2010, and provides that the default (in the amount of $1,754.16) must be cured on or before February 21, 2010. Defs.' Ex. A-4, Notice of Default, January 22, 2010. The second notice of default is dated February 22, 2010, and states that the default (in the amount of $2,004.02) must be cured on or before March 24, 2010. Defs.' Ex. A-5, Notice of Default, February 22, 2010. Along with these notices, Defendants offer the affidavit of Lora J. Stanford, BOA's Operations Team Manager, in which she describes the documents as business records and declares that each of the two notices was sent by U.S. Certified Mail, Return Receipt Requested, on January 22, 2010 and February 22, 2010, respectively. Defs.' Ex. A, Decl. of Lora J. Stanford.

After review of the evidence presented, the Court finds that Defendants have in fact complied with the notice of default requirements of Texas Property Code § 51.002(d). Based upon Defendants' submission of copies of the notices and accompanying affidavit attesting to the time and manner in which the notices were sent, the Court concludes that Defendants have informed Plaintiffs of their default, right to cure, and date by which the default must be cured by sending them notices by certified mail. The notices further give Plaintiffs over twenty days to cure the default and explain that the loan will be accelerated in the event the default is not cured, thus satisfying the requirements under the Texas Property Code as well as the common law requirement that a notice of intent to accelerate be provided. Tex. Prop. Code § 51.002(d); *Ogden v. Gibraltar Sav. Ass'n*, 640

S.W.2d at 233–34.

With respect to Plaintiffs' argument that Defendants lacked the authority to send these notices, the Court observes that it has previously decided this issue; as explained above, Defendants have established that they had the authority to send the notices of default. Accordingly, the Court concludes that Defendants have provided competent summary judgment evidence demonstrating that they have satisfied the notice of default requirements under the Texas Property Code. Therefore, by holding Plaintiffs in default on their loan obligations, Defendants have not engaged in or threatened an "action prohibited by law," and thus have not violated the TDCPA. Tex. Fin. Code § 392.301(a)(8).

2.    Notice of Sale under Texas Property Code § 51.002(b)

Plaintiffs next claim that Defendants failed to give a notice of foreclosure sale as required by section 51.002(b) of the Texas Property Code. Pls.' Orig. Pet. 5. Again, other than asserting that Defendants lacked "capacity" to issue the notice of sale, Plaintiffs do not specify how Defendants violated this section. *Id.*

As previously explained, section 51.002(b) of the Texas Property Code states that notice of sale must be given at least twenty-one days before the date of the sale by: (1) posting at the courthouse door of each county in which the property is located a written notice designating the county in which the property is sold; (2) filing a copy of the notice in the office of the county clerk of each county in which the property is located; and (3) serving written notice of the sale by certified mail on each debtor who, according to the mortgage servicer of the debt, is obligated to pay. *Id.* §§ 51.002(b)(1)–(3). As with the notice of default discussed above, proof of notice of sale can be established through the affidavit of a person with knowledge of the fact that service of the notice was

completed. *Id.* § 51.002(e). Again, actual notice of sale is not required. *Martins v. BAC Home Loans Servicing, L.P.*, 722 F.3d at 256.

To establish their adherence to the notice of sale requirements outlined in section 51.002(b) of the Texas Property Code, Defendants present a document titled "Notice of Substitute Trustee's Sale," dated December 12, 2011. Defs.' Ex. B-2, Notice of Foreclosure Sale. The document describes the Property as well as the current mortgagor and mortgagee, states that the foreclosure sale will take place on January 3, 2012, and bears a stamp indicating that it was filed with the Warren County Clerk's Office in December 2011. *Id.* Defendants also present the affidavit of Paul Butler, Vice President of ReconTrust, in which he explains that on December 12, 2011, ReconTrust notified Plaintiffs of the Property's foreclosure sale by U.S. Certified Mail, Return Receipt Requested. Defs.' Ex. B, Decl. of Paul Butler. Defendants further offer as evidence the Substitute Trustee's Deed, which indicates that the foreclosure sale of the Property was conducted on January 3, 2012, as was set forth in the notice of sale. Defs.' Ex. B-3, Substitute Trustee's Deed.

In light of the summary judgment evidence presented by Defendants and Plaintiffs' failure to offer opposing evidence, the Court concludes that Defendants have demonstrated their compliance with the notice of sale requirements of Texas Property Code § 51.002(b). After review of the copy of the notice of sale and the appended affidavit attesting to the manner and dates on which the notice was sent, the Court finds that there is no genuine issue of material fact as to whether Defendants informed Plaintiffs of the Property's sale by certified mail and filed the relevant notice with the Warren County Clerk's Office. Moreover, the notice was sent over twenty-one days prior to the actual date of the sale. Thus, Defendants have fulfilled the Texas Property Code's requirements. Tex. Prop. Code § 51.002(b). Furthermore, as noted above, Defendants have already

established that they were properly authorized to send this notice. Accordingly, by foreclosing on the Property, Defendants have not engaged in or threatened an "action prohibited by law," and thus have not violated the TDCPA. Tex. Fin. Code § 392.301(a)(8).

> 3.    Filing Suit for Forcible Detainer Against Plaintiffs

The Court next considers Plaintiffs' assertion that Defendants violated the TDCPA by initiating a forcible detainer suit against them in Justice of the Peace Court, Precinct 4, Dallas County, Texas. Pls.' Orig. Pet. 5. Defendants move for summary judgment on this issue and argue that "[t]o the extent Plaintiffs are asking for relief from the judgment of the Dallas County Court of Law in U.S. Bank's forcible entry and detainer suit, this Court does not have jurisdiction to consider the same." Defs.' Br. 4, 8.

As Defendants indicate, following their forcible detainer suit against Plaintiffs, the Dallas County Court at Law No. 5 entered a judgment ordering that Defendants (identified as "plaintiffs" in the state court matter) are entitled to possession of the Property on May 21, 2013 and issued a writ of possession on May 29, 2013. *Id.* at 4 n.14; *see also U.S. Bank, N.A. v. Covarrubias, et al.*, Dallas County Court at Law No. 5, No. cc-13-02761-E. The Court disagrees with Defendants' assertion that Plaintiffs are seeking review of this decision, but rather notes that Plaintiffs are claiming that the initiation of this lawsuit constitutes an "action prohibited by law" under the TDCPA. Pls.' Orig. Pet. 5. Thus, without reviewing the details or outcome of the forcible detainer action, this Court must determine whether initiating such proceedings in fact qualifies as an action prohibited by law. Based on the summary judgment evidence presented by Defendants and discussed in the previous two sections, the Court concludes that Defendants complied with the requirements of the Texas Property Code in initiating and conducting foreclosure proceedings. After review of the Substitute

Trustee's Deed submitted by Defendants, which indicates that U.S. Bank purchased the Property at the January 3, 2012 foreclosure sale, the Court concludes that Defendants obtained the right to possession of the Property and thus were entitled to initiate eviction proceedings. *See* Tex. Prop. Code § 24.002(a)(2) (providing that "[a] person who refuses to surrender possession of real property on demand commits a forcible detainer if the person . . . is a tenant at will or by sufferance, including an occupant at the time of foreclosure of a lien superior to the tenant's lease."). Accordingly, this action is not "prohibited by law" and thus does not violate the TDCPA. Tex. Fin. Code § 392.301(a)(8).

> 4.    Notice to Vacate under Texas Property Code §§ 25.002 and 24.005

Plaintiffs further maintain that Defendants failed to comply with the notice requirements of Texas Property Code §§ 24.002 and 24.005 prior to initiating the forcible detainer suit. Pls.' Orig. Pet. 5. Defendants insist, however, that they provided Plaintiffs with the required notices to vacate prior to commencing the forcible entry and detainer action against them. Defs.' Br. 4.[10]

Section 24.002 of the Texas Property Code governs forcible detainer actions, and provides, in relevant part, that "the demand for possession [from a person without right of possession] must be made in writing by a person entitled to possession of the property." Tex. Prop. Code. § 24.002(b). The statute then explains that the demand for possession must also comply with the requirements for notice to vacate under section 24.005 of the Texas Property Code, which provides that "[i]f the

---

[10] Defendants also argue that Plaintiffs are precluded from raising this issue before this Court, as it should have been raised on appeal from the state court's decision in the forcible detainer suit. Defs.' Br. 8. As previously explained, the Court is not reviewing the judgment of the forcible detainer suit, but is rather analyzing the narrow issue of whether Defendants engaged in "an action prohibited by law"—in this case, whether they failed to comply with Texas Property Code §§ 24.002 and 24.005—that could be actionable under the TDCPA. *See* Tex. Fin. Code § 392.301(a)(8).

occupant is a tenant at will or by sufferance, the landlord must give the tenant at least three days'

written notice to vacate before the landlord files a forcible detainer suit unless the parties have

contracted for a shorter or longer notice period in a written . . . agreement." Tex. Prop. Code §

24.005(b). The statute further states that

> [t]he notice to vacate shall be given in person or by mail at the
> premises in question. Notice in person may be by personal delivery to
> the tenant or any person residing at the premises who is 16 years of
> age or older or personal delivery to the premises and affixing the
> notice to the inside of the main entry door. Notice by mail may be by
> regular mail, by registered mail, or by certified mail, return receipt
> requested, to the premises in question.

*Id.* § 24.005(f).[11]

In support of their assertion that they provided the required notices prior to commencing the

forcible entry and detainer action against Plaintiffs, Defendants present an affidavit by Nancy

Nguyen, eviction specialist for BDF Holdings, L.P., an affiliated service provider of Barrett Daffin

Frappier Turner & Engel, L.L.P. ("Barrett Daffin"), the entity that initiated the eviction proceedings

against Plaintiffs. Defs.' Ex. C, APP 31–32, Decl. of Nancy Nguyen. The affidavit explains that on

July 25, 2012, Barrett Daffin notified Plaintiffs that they were required to vacate the Property within

three days or face a forcible entry and detainer action. *Id.* The affidavit states that this notice was

sent by certified mail. *Id.* Defendants also submit a copy of the notice to vacate, dated July 25, 2012,

in which Barrett Daffin, on behalf of U.S. Bank, advises Plaintiffs and any other tenants or occupants

---

[11] Texas Property Code § 24.005(b) also provides that "[i]f a building is purchased at . . . a trustee's foreclosure sale under a lien superior to the tenant's lease and the tenant pays rent and is not otherwise in default under the tenant's lease after foreclosure, the purchaser must give a residential tenant of the building at least 30 days' written notice to vacate if the purchaser chooses not to continue the lease." Because this part of Texas Property Code § 24.005(b) does not apply to Plaintiffs, in part due to their continuing default on their loan obligations, they are not entitled to 30 days' notice.

of the Property that they are to vacate the premises within three days of receipt of the notice. Defs.' Ex. C-1, APP 33–47, Notice to Vacate.[12] A review of the Original Petition for Forcible Detainer, filed by U.S. Bank in a Justice of the Peace Court in Dallas County, Texas, indicates that it was filed on August 9, 2012. *See U.S. Bank, N.A. v. Covarrubias, et al.*, No. JE12-02544-L.

Plaintiffs present no argument or evidence in opposition to Defendants' contention that the notice to vacate was timely sent. After considering the relevant evidence in the light most favorable to Plaintiffs, the Court finds that Defendants have satisfied their burden to show that they have provided Plaintiffs with the required notice to vacate on July 25, 2012. In light of the public records indicating that U.S. Bank filed its forcible detainer action more than three days after sending Plaintiffs the notice to vacate, the Court finds that Defendants have not violated the requirements of Texas Property Code §§ 24.002 and 24.005. Therefore, the Court determines that Defendants have not engaged in an "action prohibited by law" and thus have not violated the TDCPA. Tex. Fin. Code § 392.301(a)(8).

After review of the four bases for TDCPA violations presented by Plaintiffs, as well as the relevant evidence and arguments presented by both sides, the Court concludes that Defendants have demonstrated that they have not engaged in activity prohibited under the TDCPA. The Court thus **GRANTS** the Motion for Summary Judgment with respect to this claim.

D.    *Breach of Contract*

Lastly, the Court considers Plaintiffs' claim for breach of contract. Plaintiffs assert the

---

[12] Defendants present several copies of the notice to vacate: one addressed to the occupants or tenants of the Property; two addressed to Plaintiff Olga Covarrubias; and two addressed to Plaintiff Marco Covarrubias. All notices otherwise appear identical, and Defendants make no effort to reveal any distinctions among them.

following theories in support of their breach of contract claim against Defendants: (1) Defendants

violated sections 51.002(b) and 51.002(d) of the Texas Property Code, incorporated by reference

into the Deed of Trust, by giving the requisite notices without having the authority to do so; and (2)

Defendants violated a Consent Judgment entered between BOA and the United States by refusing

to invalidate the foreclosure sale of the Property, despite Plaintiffs' alleged attempt to modify their

loan. Pls.' Orig. Pet. 6–7.[13]

To prevail on a breach of contract claim, a plaintiff must demonstrate "(1) the existence of

a valid contract; (2) performance tendered by the plaintiff; (3) breach of the contract by defendant;

and (4) damages to the plaintiff resulting from that breach." *Wright v. Christian & Smith*, 950 S.W.2d

411, 412 (Tex. App.—Houston [1st Dist.] 1997, no pet.).

As a preliminary matter, the Court addresses Defendants' argument that Plaintiffs' own

default bars their breach of contract claim. Defs.' Br. 10. In support of this assertion, Defendants cite

to authority that discusses the general rule that "a party to a contract who is himself in default

cannot maintain a suit for its breach." *Id.* (quoting *Dobbins v. Redden*, 785 S.W.2d 377, 378 (Tex.

1990) (internal quotation marks omitted)). However, where the alleged contractual obligation to

provide notice presupposes the recipient is already in breach of his contractual obligations, failure

to provide notice is nonetheless actionable. *See Hernandez v. U.S. Bank, N.A.*, No. 3:13-CV-2164-O,

2013 WL 6840022, at *6 (N.D. Tex. Dec. 27, 2013). Defendants fail to note that claims arising out

of a deed of trust are not necessarily precluded by a plaintiff's default; indeed, Plaintiffs' failure to

make the required payments does not prevent them from bringing a breach of contract claim, as the

---

[13] Apart from this passing reference to a loan modification, Plaintiffs offer no other explanations or assertions regarding any attempt to modify their loan.

notice requirement and the foreclosure proceedings under the Deed of Trust were in fact triggered by Plaintiffs' default. *See id.*

Having concluded that Plaintiffs can assert a breach of contract claim despite their default, the Court considers the arguments and evidence presented by the parties on each of the bases for the breach of contract claim, in turn, below.

> 1.      Texas Property Code Notice Requirements

Under their claim for breach of contract, Plaintiffs reiterate their contention that Defendants violated the Texas Property Code because the parties who sent the required notices of default and foreclosure sale did not have the authority to do so. Pls.' Orig. Pet. 6. As the Court has explained in previous sections, Defendants have introduced sufficient summary judgment evidence to demonstrate that the notices required by the Texas Property Code were issued by parties properly authorized to do so. Therefore, there are no violations of the Texas Property Code to support a claim for breach of contract.

> 2.      Consent Decree

Next, the Court turns to Plaintiffs' assertion that Defendants breached the Deed of Trust because their initiation of foreclosure proceedings violated a Consent Judgment entered on or about March 12, 2012 in the United States District Court for the District of Columbia. *See* Pls.' Orig. Pet. 6 (discussing a consent decree styled *United States of America, et al. v. Bank of America, N.A.*). Plaintiffs claim that, because "the State of Texas had joined as a party plaintiff through its attorney general, the Defendant [BOA] as claimed servicer of the Loan, was included as a party defendant." *Id.* Plaintiffs further assert that, pursuant to the Consent Judgment: (1) BOA's parent company was to pursue modification rather than foreclosure as a matter of policy and was to seek loss mitigation

options rather than foreclosure; (2) BOA's parent company was to pursue loss mitigation options and communicate those with borrowers without the use of recorded voice messages; (3) BOA's parent company was to cease collection efforts while borrowers had submitted a loan modification application; (4) borrowers would be allowed thirty days to respond to any notification that their loan modification applications are incomplete; and (5) the above provisions apply to BOA as well as to its parent company and affiliates. *Id.* at 6–7. Plaintiffs maintain that Defendants failed to abide by the Consent Judgment, and thus breached the Deed of Trust, by refusing to cease the foreclosure proceedings during Plaintiffs' alleged attempt to modify their loans. *Id.* at 7. Defendants move for summary judgment on this issue and argue that Plaintiffs cannot bring a private cause of action for a violation of a consent decree. Defs.' Br. 9.

The Court agrees that Plaintiffs cannot enforce the consent decree referred to in their Original Petition because they are not parties to it. As the U.S. Supreme Court has stated in *Blue Chip Stamps v. Manor Drug Stores*, "a well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even through they were intended to be benefitted by it." 421 U.S. 723, 750 (1975); *see also Reynolds v. Bank of America, N.A.*, No. 3:12-CV-1420-L, 2013 WL 1904090, at *10 (N.D. Tex. May 8, 2013) (concluding that a consent decree "is more akin to a contract or agreement between two parties" and noting that mortgagors "do not have standing to enforce a consent decree that banks have entered into with the government"). Because Plaintiffs have not alleged that they are parties to the consent decree, and because no evidence has been presented to that effect, the Court finds that Plaintiffs' breach of contract claim based on the consent decree fails as a matter of law.

In sum, the Court concludes that Defendants have established that neither the Texas

Property Code nor the consent decree discussed by Plaintiffs provide a basis for their breach of contract claim. Accordingly, the Court **GRANTS** Defendants' Motion with respect to this claim.

E.      *Injunctive Relief*

Lastly, the Court turns to Plaintiffs' request for injunctive relief. They ask the Court "to bar any transfer of any interest in their homestead Property;" "to bar any forcible detainer or foreclosure proceeding;" "to stay any proceeding outside of or in any other Court" seeking foreclosure or possession of the Property; and to bar further violations of the TDCPA. Pls.' Orig. Pet. 7.

To obtain injunctive relief, a plaintiff must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury if the injunction is not granted; (3) that the threatened injury to plaintiff outweighs any damage the injunction may cause to defendant; and (4) that the injunction will not disserve the public interest. *DSC Commc'ns Corp. v. DGI Techs., Inc.*, 81 F.3d 597, 600 (5th Cir. 1996); *Canal Auth. of State of Fla. v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

Plaintiffs maintain that they will be "irreparably injured without adequate remedy at law if the Property's foreclosure is permitted to occur" or if they were to be evicted. Pls.' Orig. Pet. 7. They further explain that substantial recovery is probable, and that an injunction would pose Defendants minimal risk. *Id.* Lastly, they insist that "the issuance of such an order would be in the public interest and specifically in the interest of the integrity of the banking and home lending system." *Id.*

Defendants move for summary judgment on this issue and argue that Plaintiffs' claim for injunctive relief is dependent upon their other claims. Defs.' Br. 10. Because Plaintiffs' remaining claims fail as a matter of law, Defendants contend that Plaintiffs are not entitled to injunctive relief. *Id.* As Defendants correctly indicate, "a request for injunctive relief without a cause of action

- 30 -

supporting entry of judgment is fatally defective and does not state a claim." *Motten v. Chase Home Finance*, 831 F. Supp. 988, 997 (S.D. Tex. 2011) (citing *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 210 (Tex. 2002)); Defs.' Br. 10–11. The Court has granted summary judgment with respect to all other claims discussed by Defendants in their Motion. The only remaining claim, on which Defendants do not appear to move for summary judgment, is Plaintiffs' wrongful foreclosure claim. *See* Pls.' Orig. Pet. 8. "[T]he elements of a wrongful foreclosure claim are: '(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price.'" *Biggers v. BAC Home Loans Servicing, L.P.*, 767 F. Supp. 2d at 729 (quoting *Sauceda v. GMAC Mortg. Corp.*, 268 S.W.3d 135, 139 (Tex. App.—Corpus Christi 2008, no pet.). As a basis for this claim, Plaintiffs reiterate some of the issues and contentions they have so far raised: (1) "noncompliance with applicable Texas statutory provisions;" (2) violations of the TDCPA; and (3) lack of capacity and authority to initiate foreclosure proceedings. Pls.' Orig. Pet. 8. Because the Court has concluded that Defendants have satisfied their burden in demonstrating that there is no evidence of a fraudulent lien, violations of the Texas Property Code, violations of the TDCPA, or breach of contract, the Court is unable to discern a basis for Plaintiffs' wrongful foreclosure claim. Therefore, because no viable claims remain, the Court concludes that Defendants have established that Plaintiffs are precluded from asserting a claim for injunctive relief.

For the foregoing reasons, the Court finds that there are no remaining causes of action to support Plaintiffs' request for injunctive relief. The Court therefore **GRANTS** Defendants' Motion for Summary Judgment with respect to this claim.

IV.

CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 10) is **GRANTED.** The Court therefore **ORDERS** Plaintiffs' claims against Defendants **DISMISSED WITH PREJUDICE.**

SO ORDERED.

SIGNED: January 15, 2015.

_____

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE